FI. FA., levy and sale made, among other things, of a steam engine, boilers, cranes, cupola and fan, connected with the establishment of defendants for manufacturing steam engines, machinery and other manufactures in iron and brass, c. *Page 333 
 Mr. Gray, of counsel for Orrick Campbell, judgment
creditors of Adams, Betts Hodgson, moved to set aside the levy and sale of the machinery connected with the defendants' manufactory, on the ground that the same was a part of the real estate of defendants; and not personal property. The sale was made under an agreement to submit this question to the decision of the Superior Court, and public notice of this was given at the sale, and that the machinery should not be severed or removed, nor possession delivered to the purchaser, until it should be determined that the said property was personal property, liable to be levied on and sold under the said fi. fa. Rule to showe cause.
James C. Adams, one of the defendants, was the owner of a lot of ground in Wilmington, upon which, prior to the 1st of January, 1845, he had erected a foundry, including a steam engine, boilers, cranes, cupola, c., all fixed to the premises in the usual way. The steam engine was put up under a shed building outside the body of the main building, hut connected with it, and passing into it; the boilers, cupola, c., were in the main building; the cranes bedded in the floor, and inserted in a main girder of the house. The coupola, was a large brick chimney, running from the ground floor up through the roof of the building. A schedule of these, and other articles amounting to $7,593 10, was made under the hand of James C. Adams, but without date, purporting to be an inventory of property sold by James C. Adams, to the firm of Adams, Betts Hodgson. It had an endorsement made by Adams, as was alledged after the entry of the judgment of Orrick Campbell, in these words:
"The within described property was sold by me on the first day of January, 1845, to the firm of Adams, Betts Hodgson, at the appraisement within made, they occupying my lot in Wilmington, where the foundry stands, by my permission and agreement, and being bound to pay me a reasonable compensation therefor on settlement." The judgment of Orrick Campbell was dated 9th April, 1845; the judgment of Mr. Rice bore date 13th August, 1845, and was confessed on bond given 7th August, 1845.
Mr. Gray, contended that the engine, boilers, c., were a part of the real estate of James C. Adams, at the time of the entry of this judgment, and continued so after the endorsement of this schedule; and that these fixtures were not liable to seizure under the execution of Mr. Rice.
The law is well settled that fixtures are a part of the realty, and pass by a deed of the realty, without specification. No act has been *Page 334 
done by Adams to change the character of this property. There was no actual severance of them from the freehold. Even if he had sold these fixtures, they could, without severance, pass only by such a conveyance as would pass real estate. This schedule and endorsement, if made in good faith, were not sufficient to pass the title to these fixtures.
The law of fixtures is subject to some modifications, as between landlord and tenant, in favor of trade; but none coming up to the present case. (3 East 38, Elwes vs. Maw.) A tenant of a farm cannot remove outhouses erected by him at his own expense, and for his convenience during his term.
In Pennsylvania, it is decided that such fixtures are a part of the real estate, if erected by the landlord; otherwise, if erected. by the tenant for the purpose of carrying on his trade. (3 Watt's Rep. 140; 4 Watt's Rep. 330; 17 Serg. Rawle 415; 7 Watt's Rep. 106; 2 Watts Serg. 390, 116.)
Mr. Wales, for John Rice, the execution creditor of Adams, Betts Hodgson. — This is not a question between the heir and personal representative of the owner of this property. It arises between Orrick Campbell, who have no interest in the real estate of the defendants, but merely a lien upon it, and the execution creditors who have levied on this property as the personal property of the defendants.
The first question then is, what right has the judgment creditor as such, to interfere with the levy of the execution creditor. Mr. Adams being the owner of the premises, as well as the fixtures, sold the fixtures to the defendants to be used by them on the premises, for the purposes of manufacturing. Is their right to these fixtures to be taken away from them by the subsequent entry of the judgment of Orrick Campbell?
The next question is, whether these are real fixtures, or only temporary fixtures for trade and manufacture? The general principle on this subject is, that for the benefit of trade, such articles as these are to he regarded as distinct from the freehold, and subject to removal by the tradesman or manufacturer. Buildings, c., erected for agricultural purposes are often held as connected with and belonging to the freehold, where fixtures of trade would be held otherwise. (3 East Rep. 38; 13 Law Lib. 16, 54, 22.)
Another question is, whether the sale and transfer under the schedule to defendants, before the judgment of Orrick Campbell, did not effect a severance of these fixtures? Adams, at that time, *Page 335 
had the perfect right to sell these articles, and sever them as he pleased. The owner of a farm might sell the wood-leave, and a subsequent judgment lien would not affect it, much less will it prevent a purchaser of such fixtures from removing them. After the purchase by Adams, Betts Hodgson, these fixtures are to be regarded as the tenant's, set up for the use of their trade, and subject to removal at the exigencies of trade, or the will of the tenant. (18 Law Lib. 7, 8, 27-8.)
Mr. Gray, in reply. — The cases I have cited, show that these articles were on the 1st of January, 1845, a part of the real estate, and of the freehold. The facility of their removal is not the test of their character; but being erected by the owner of the realty, and forming a part of the realty, they continue to partake of that character, unless actually severed and taken away.
The only relaxation of this rule is in favor of tenants and tradesmen, who put up such machinery for the exercise of their own trade: every case of exception referred to is of that kind. But this is no such case. The defendants are not tenants of Mr. Adams, they did not erect these fixtures. The fixtures were placed there by the owner of the land, and were a part of the realty both on the 1st of January, and the 9th of April. Nothing has been done to sever these fixtures from the realty in fact; and the schedule made by Mr. Adams, even if made on the 1st of January, or a sale, or renting by Adams, would not change the character of the fixtures if they be a part of the realty, without such a conveyance as relates to the realty.
As to the right of Orrick Campbell, to object to the levy in this form, it is by express agreement with other counsel of Mr. Rice, and to prevent a resort to chancery. We would have the right however, to apply to this court to stop the waste by removing these engines, c.
By the Court:
The property levied on by this execution, so far as the present motion appears, consists of real fixtures placed upon the premises by the owner of the property, and by him attached to the freehold. They became by his act a part of the foundry, not for a temporary purpose, but as a fixed establishment; and, as such, were used by the defendants in copartnership, the owner of the premises being one of the partners. Having thus acquired the character of real property by such a union and connection with the realty as unquestionably made them, in his hands, a part of the freehold, subject to real estate liens, and not liable to be seized as chattels, *Page 336 
this character could not be changed otherwise than by actual severance; nor could they be transferred before severance except as a part of the realty, and by forms of conveyance suited to real property. The parol sale, therefore, to Adams, Betts Hodgson, evidenced by the written memorandum without date, even if made before the entry of Orrick Campbell's judgment, would not prevent the lien of that judgment, nor subject these fixtures to seizure on plaintiff's execution as the personal chattels of the defendants in preference to the judgment of Orrick Campbell. We are, therefore, of opinion that the rule in this case should be made absolute; and we did not consider this as in any degree conflicting with adjudged cases in relation to trade fixtures set up by tenants, for their own use and convenience, to facilitate the carrying on their business.